## BURKS *v.* STATE.

### Opinion delivered October 8, 1904.

1. WITNESS—IMPEACHMENT ON CROSS-EXAMINATION.—On the cross-examination of defendant's mother offered by defendant as a witness, it was error for the prosecuting attorney to ask her repeatedly if defendant's sister, who was not a witness in the case, was the keeper of a house of ill-fame, since the persistency with which the question was reiterated may have led the jury to believe the fact, which the witness denied, and thereby have prejudiced the jury against the defendant. (Page 466.)

2. SAME.—On the cross-examination of defendant's father it was error to permit the prosecuting attorney to ask the witness what he gave a certain witness to testify for defendant. (Page 467.)

3. TRIAL—IMPROPER ARGUMENT.—It was error to permit the prosecuting attorney to refer to a certain witness as "a contraband fishtrap man," and to state to the jury that the fact that he had been introduced as a witness was conclusive evidence of defendant's guilt, where there was no evidence that the witness was engaged in any unlawful business, or that his character was bad. (Page 468.)

4. SAME—PREJUDICE.—Error of the trial court in refusing to stop an improper argument in a felony case is ground for reversal if the evidence of defendant's guilt is conflicting, and such as not to satisfy the court that no prejudice resulted therefrom. (Page 468.)

Appeal from Hot Spring Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Reversed.

### STATEMENT BY THE COURT.

On the 2d day of October, 1903, as W. W. Rieblin was returning from Hot Springs to his home in the country, he was shot by some one who lay in wait with evident intention of taking his life. The shot was fired seemingly from a pistol or rifle, and took effect in the side of his head. Rieblin was stunned and rendered unconscious from the wound. Shortly afterwards some of his neighbors noticed the team and wagon in which he had gone to town going along the road without a driver, and they went to look for him, and found him weltering in blood and unconscious. He had been shot twice, once in the head, and once in his leg, which was broken. His face had also been beaten, and his neck was cut as if someone had endeavored to make sure of his death by cutting his throat. He was carried to his home, and finally recovered from his injuries. After he became conscious he charged Al Burks with having committed the crime, and Burks was indicted for the crime of an assault with intent to kill.

On the trial Rieblin testified positively that Burks did the shooting. Rieblin, after stating that he was running a little grocery store in the country, and had gone to Hot Springs that day on business, said: "I was not feeling well, and started out home earlier than usual. I went on across the river, and just as I got to the slough something called my attention, and I looked around and saw defendant and another man standing in front of me. They both had pistols in their hands. I saw Al Burks as plain as I see you now. I saw the other man as plain as I see you now. Just as I looked up defendant Al Burks shot me in the side of the head. I became unconscious, and did not know anything more until one or two o'clock next morning."

There was also testimony on the part of the state tending to show that Rieblin and the defendant were not on friendly terms on account of some remarks made by Burks about Mrs. Rieblin, and which Rieblin resented.

There was also testimony tending to show that Burks, though only twenty years of age, was married, and had been paying more attention to Mrs. Rieblin than Rieblin approved of, and that on that account there was a state of enmity between the two men.

On the other hand, defendant proved by a number of witnesses that on the day the crime was committed he was sick at home with chill and fever, and that he did not leave home until after dark, when he went away with his sister and one A. Martel to be present at their marriage which took place that night, the defendant being present. The facts supporting the alibi were proved not only by the father and mother of defendant at whose house he lived, but by other persons not connected with him, and, taken together, make out a strong defense, but it is unnecessary to set out that evidence.

The defendant was the owner of a 45 calibre Colt's pistol, but the evidence does not show the size of the balls which were fired at Rieblin, except that one Sherrill testified that a few days after the crime he went to the place of the shooting, and that about ten or twelve steps from where Rieblin was found he found behind a big rock two No. 38 cartridges. He did not before the trial tell anyone about finding the cartridges except J. W. Burks, the father of defendant.

When J. W. Burks took the stand and testified for defendant, he was asked when Sherrill told him about finding the cartridges, and cross-examined at some length about the matter, and asked if he did not know that Sherrill never found any cartridges, and that such story was a fabrication. He replied that Sherrill some weeks after the crime was committed informed him that he had found the cartridges, and witness said that was all he knew about it. The prosecuting attorney then put this question: "Now, Mr. Burks, what did you give Sherrill to testify in this case for you?" The attorney for the defendant objected, and said to the court: "I wish to say, your Honor, that the prosecuting attorney, knowing as he does what answers will be given to these improper questions, is only seeking to get statements before the jury in the guise of interrogatories, which can only serve to prejudice the jury against the defendant. I move the court to admonish the jury not to regard the questions objected to, and to instruct them that they are improper." But the only reply of the court was, "Proceed with the examination" and the defendant excepted.

Mrs. Jane Burks, mother of the defendant, testified on behalf of defendant that on the day the crime was committed defendant was sick at home with chill and fever; that in the afternoon of

that day she, at request of her husband, went to Hot Springs, some two and a half miles away, to get ice and medicine for him. She further stated that while there she visited her daughter, who was employed in the city, and who informed her that she would be married that night to one Martel, and that she desired that some member of her family should be present when the ceremony was performed. That, in reply to this statement of her daughter, she told her that Algy, the defendant, was sick, and could not go; that she reached home on her return about five o'clock; that defendant was still there sick, but that shortly afterwards his fever began to go down, and that about seven o'clock he left the house with his sister to attend her marriage. On the cross-examination the following questions were propounded by the attorney for the state:

"Q. Where did you find your daughter when you got to town? A. I found her at the railroad restaurant. Q. What was she doing there? A. She was working in the restaurant for Martel. Q. Was she not in the back of the Choctaw saloon? A. No. Q. Did you not have to go in the Choctaw saloon to find her? A. No, I did not. She was at work in the railroad restaurant. Q. Now, is it not a fact, Mrs. Burks, that your daughter was occupying rooms over the Choctaw saloon? A. No. Q. Did you not have to go into the saloon to find her? A. No. Q. Well, where did you find her? A. I do not know the street. It was up from the railroad restaurant. Q. Now, Mrs. Burks, is it not a fact that your daughter was keeping a house of ill fame in the city of Hot Springs? A. No, she was not keeping a house of ill fame. She was working for Martel, waiting on the table and doing other work in the restaurant."

Nearly every one of these questions was objected to by counsel for defendant, who contended that it was immaterial where Mrs. Burks found her daughter, and that such evidence was incompetent and prejudicial to the rights of the defendant. But the court overruled the objections.

The bill of exceptions shows the following argument by the prosecuting attorney over objections by the defendant: "Gentlemen of the jury, innocence does not need perjured testimony to prove its innocence. If defendant was not guilty, why did those interested in his defense seek to prove his innocence by such

testimony as was offered you by the witness Sherrill? Gentlemen, if there was ever a fabrication of the whole cloth, that evidence of Sherrill's was it. Why, gentlemen of the jury, the very fact that they offer you such evidence as that fabrication of Sherrill's is proof that the defendant is guilty." (Counsel for defendant here made objection to the argument as improper, but the objections were overruled and exceptions saved.) The prosecuting attorney, proceeding with his argument, said: "And yet, gentlemen of the jury, they would have you believe that defendant is innocent because Sherrill, the contraband fishtrap man, says that he found two cartridges at the place where this assault was made. I submit to you, gentlemen, that the very fact that they offer such evidence as that is conclusive of defendant's guilt." Here counsel for defendant said to the court: "I object to that as not being warranted by the record, and as being improper and prejudicial to the defendant." The objection was overruled, and exceptions saved.

The other facts sufficiently appear from the opinion.

*M. S. Cobb,* for appellant.

The third instruction was erroneous. 53 Miss. 410; 24 Am. Rep. 703; 117 N. Y. 480; 86 Pa. St. 54; 27 Am. Rep. 683; 40 Kan. 482; 12 Ind. 670; 85 Cal. 421; 16 Oh. St. 583. The court erred in permitting the state to introduce the pistol in evidence by way of rebuttal. Sand. & H. Dig. § 2224. It was error to permit the prosecuting attorney to ask questions touching the chastity of appellant's sister. 34 Pac. 1078; 83 Cal. 138; 31 Neb. 566; 8 Cal. 457; 58 Ark. 473; 36 Mo. App. 29; 60 L. R. A. 716; 4 L. R. A. 296. It was likewise error to permit the prosecuting attorney to ask a witness what defendant had paid him for his testimony. The court erred in allowing the prosecuting attorney to make improper arguments, and, when objection was interposed, telling him to "proceed." 68 Ala. 476; 115 Ala. 69; 35 Fla. 737; 20 Kan. 650; 13 S. W. 1008; 47 L. R. A. 641; 58 Ark. 473; 54 L. R. A. 659; 20 L. R. A. 609; 88 Mich. 450; 13 Ind. 303; 92 Ia. 540; 19 Tex. App. 308.

*Geo. W. Murphy, Attorney General,* for appellee.

There was no error in permitting the introduction of the pistol as rebuttal evidence. Sand. & H. Dig. § 2224.

Riddick, J. (after stating the facts). This is an appeal from a judgment convicting the defendant of the crime of an assault with intent to kill and ordering him confined in the penitentiary at hard labor for the term of six years. If the defendant is guilty of the crime of which he has been convicted, the punishment is none too heavy, for it was an attempt to take the life of an innocent man, and the circumstances conclusively show that the party who did it was actuated by cool and deliberate malice. But though Rieblin, the prosecuting witness, testified on the trial positively to the fact that the defendant was one of the parties who committed the assault, yet there was evidence in the case that tended to show that soon after the crime was committed he was uncertain as to the identity of the person committing the assault, and on one occasion he charged another man with having committed it, though he said on the stand that this was done only in jest. He testified that Al Burks committed the assault, and that another man was with him at the time. Both of them, he said, had pistols in their hands, and that he saw them both distinctly. But, though on the stand he was positive that Al Burks was one of his assailants, he did not seem to know who the other party was, and at different times laid the crime to different parties. At one time he said that it was a brother of Burks, and then that it was a brother-in-law of Burks, and at last he seems to have been positive only as to the defendant.

We have not set out the testimony in full, but no one can read it and not see that there is room for doubt as to the identity of the parties that committed the crime, though on the whole record the evidence is sufficient to sustain the verdict, and we should feel no inclination to disturb the finding of the jury if the defendant had been given a fair and impartial trial.

The charge of the court to the jury was, we think, in accordance with the law, and his rulings in the trial were generally correct, but in the matter of the cross-examination of some of the witnesses of the defendant and in the argument of the prosecuting attorney to the jury we are of the opinion that this officer was allowed to go beyond the bounds of the legitimate cross-examination and argument, and it seems to us that he thereby probably caused some prejudice to the rights of the defendant.

There was nothing prejudicial in asking Mrs. Burks, the mother of defendant, where she found her daughter when she visited her in Hot Springs on the day the crime was committed, though we do not see that the place where she met her daughter was very material. But when she had been asked that question, and had answered it, we do not think it was proper for the prosecuting attorney to persist in repeating the question several times, and to intimate that the daughter was the keeper of a house of ill fame. The daughter was not a witness, and, even if she had been, it would not have been proper to have impeached her character in that way by the evidence of particular acts. The fact, if proved, that the sister was the keeper of a brothel was not material or proper to be considered by the jury in this case against her brother. For that reason these questions may have worked some prejudice in the minds of the jury as to the defendant, her brother. It is true that the witness answered such questions in the negative, but the persistency with which they were repeated by the attorney for the state may have led the jury to believe that he knew the witness was concealing the truth, and repeated the question on that account, and may have led them to believe the very fact that the witness denied. As the matter was entirely immaterial and outside of the case, we think the court should have sustained the objection made by the defendant.

Again, in the cross-examination of J. W. Burks, the father of defendant, the prosecuting attorney, after having questioned him concerning the finding of certain cartridges by one Sherrill who had testified to that fact, then asked him if he did not know that the pretended finding of those cartridges was a fabrication on the part of Sherrill, and that he in fact had found none. To this question the witness replied that he knew nothing about it except what Sherrill had told him; that Sherrill had said that he found the cartridges, and that was all witness knew about it. The prosecuting attorney then said: "Now, Mr. Burks, what did you give Sherrill to testify in this case for you?" Counsel for defendant interposed a vigorous objection to this question, and asked the court to tell the jury to disregard it. If the prosecuting attorney had reason to believe that Sherrill had been bribed to testify falsely by Burks, he had the right to question the witness in reference thereto, but the question propounded here goes further.

It does not ask whether there had been any reward offered the witness for his testimony. It assumes that he, Sherrill, had been bribed, and asks Burks to tell the amount he had paid him for his testimony. Now, the prosecuting attorney, it is evident, did not expect that the witness would admit that he had bribed Sherrill to testify falsely, and the question was propounded, it seems to us, not so much to elicit information, as to get before the jury the opinion of the prosecuting attorney that the witness Sherrill had been bribed to testify falsely for the defendant, and to prejudice him and the defendant in the minds of the jury. This method of cross-examination, we think, was highly improper, and we think the learned judge erred in refusing to sustain the objection to it made by defendant.

In his argument to the jury the prosecuting attorney, in commenting on the testimony of Sherrill, spoke of him as a "contraband fishtrap man," and stated to the jury that the fact that he had been introduced as a witness to testify to the finding of cartridges was conclusive evidence of the defendant's guilt. There was no evidence showing or tending to show that the witness was engaged in any unlawful business, or that his character was bad, and the fact that he had been introduced as a witness was no evidence of defendant's guilt, much less was it conclusive evidence of that fact. This line of argument was unfair and improper, and should have been stopped by the court when counsel for defendant interposed an objection thereto. But the court overruled the objection, and told the prosecuting attorney to proceed, and we think that in this ruling the court committed error. *Holder* v. *State,* 58 Ark. 473; 2 Enc. Plead. & Prac. 738; *Hall* v. *United States,* 150 U. S. 76.

Now, it does not always follow, because an attorney makes an improper argument, and the court refuses to interfere, that a judgment in favor of the party represented by the attorney will be set aside on appeal and a new trial granted. It depends on whether the court is of opinion that the improper argument and the refusal of the court to interfere prejudiced the rights of the opposite party. If the court is satisfied from the evidence that, notwithstanding the improper argument, the verdict and judgment are right, then it follows that no prejudice resulted, and no ground for a reversal on account of such argument and ruling

of the court is shown. *St. Louis, I. M. & So. Ry. Co.* v. *Boback,* 71 Ark. 427, 433. But where the evidence is conflicting, and such as not to satisfy the court that no prejudice resulted from the improper argument and ruling of the trial court thereon, this court may feel compelled, in the interest of justice, to reverse the judgment and order a new trial, that the defendant may have a fair and impartial trial. A full consideration of the matter has convinced us that such a course should be adopted in this case. The judgment is therefore reversed, and the cause remanded for a new trial.