BENTON *v.* STATE.

Opinion delivered March 31, 1906.

1.   EVIDENCE—CONSPIRACY—SUBSEQUENT DECLARATIONS.—The acts and
declarations of co-conspirators done and made in the absence of the
defendant after the consummation of the criminal enterprise can not
be admitted in evidence.   (Page 290.)

2.   APPEAL—HARMLESS ERROR.—Where a witness in a murder case was
permitted, without objection, to testify that, after the commission of
the crime, the accused burned the clothes of the man whom he was
alleged to have murdered, it was not prejudicial to permit the witness
to testify that he communicated such fact to some one else.   (Page
291.)

3.   SAME—SUFFICIENCY OF EXCEPTION.—An exception to testimony in the
following form, towit: "And the defendant here states that, in order
to save the time of the court, he objects to all evidence of actions,
conversations, etc., transpiring after the commission of the offense,
related by this witness and accomplice," was not an objection to evi-
dence that might be thereafter admitted, and was too general and in-
definite.   (Page 291.)

4.   SAME—SUFFICIENCY OF EXCEPTION TO EVIDENCE.—In the absence of an
agreement between the parties that exceptions to all decisions made

during the trial are saved without being specially mentioned at the time the decision is made (Kirby's Digest, § 6222), an objection to the introduction of testimony must be made when the testimony is offered, and the exception be reserved at the time the ruling is made. (Page 291.)

5. WITNESS—IMPEACHMENT.—A witness may be impeached by proof that he has made statements contradictory of his present testimony. (Page 292.)

6. TRIAL—EXCLUSION OF ONE'S OWN TESTIMONY.—The court properly refused to direct the jury not to consider evidence of the acts and declarations of a fellow conspirator, done and made after the commission of the offense and in defendant's absence, and tending to connect defendant with the crime, where part of such evidence was elicited by defendant on cross-examination. (Page 293.)

7. WITNESS—IMPEACHMENT—PAST ANTECEDENTS.—It was not error to permit the prosecuting attorney to ask the accused, who was a white man, whether he did not marry a negro woman. (Page 293.)

8. SAME—IMPEACHMENT BY PROOF OF INDICTMENT.—While it was error to ask the accused, a white man, whether he had been indicted for marrying a negro woman, the error was not prejudicial if he answered in the negative. (Page 294.)

9. INSTRUCTION—OBJECTION.—Where the record in a prosecution for murder in the first degree recites that after the jurors had deliberated for a time they returned into court and one of them handed the judge a written note, asking him whether they had a right under the law to find the defendant guilty of murder in the second degree, to which he replied in the affirmative, that the contents of the note were not publicly announced, and were unknown to defendant's counsel, and that defendant "objected and excepted," but fails to show that defendant asked that the contents of the note be disclosed, the objection is unavailing. (Page 294.)

10. SAME—PROVINCE OF JURY.—An instruction in a prosecution for murder in the first degree that the jury had the right under the law to find the defendant guilty of murder in the second degree was not objectionable as expressing an opinion as to defendant's guilt. (Page 296.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge; affirmed.

### STATEMENT BY THE COURT.

On June 10, 1905, the body of a man was found floating in the St. Francis river, and taken out at Madison. It was temporarily buried in the sand. It was identified as that of Walter Gray, a young man who had a store on the bank of the St. Francis River, about ten or twelve miles above Madison.

The body bore unmistakable evidence of violence. There was "a terrible wound on the body, and the head was split open." Around the neck was a barbed wire, to which was attached a piece of iron weighing about sixty pounds.

The appellant and Bob Martin, Berry Minor and John Davis were arrested, and afterwards indicted for murder in the first degree, the offense charged being the murder of Walter Gray. Appellant, on change of venue to White County, was tried and convicted of murder in the second degree, and sentenced to ten years in the penitentiary. It appears that appellant assisted Gray in his store. Neither appellant nor Gray were married, and they were constant companions, often eating and sleeping together. Customers of Gray saw him and the appellant in the store as late as nine or ten o'clock on the evening of June 6th, when Gray mysteriously disappeared. Gray was last seen in company with appellant.

Circumstantial facts were detailed in evidence which it is unnecessary for the purposes of this opinion to recite, tending to show that Gray was murdered in his room at the store, and his body taken to and cast into the river where it was afterwards found.

There was ample evidence, of a circumstantial character, aside from the testimony of the alleged accomplice, tending to connect the appellant with the commission of the crime. The testimony of John Davis shows that he and one Bob Martin were accomplices in the alleged murder of Gray. Davis, after having testified to all the details of the horrible crime, further testified that he went with appellant when he took the clothes of Walter Gray to a certain deadening (Norfleet) and burned them.

The record then shows the following:

"Q. Who did you first tell about the burning of these clothes? A. I told Mr. Sweet about it. Q. He is a white man, is he? A. Yes, sir. Q. When did you tell him about it? A. I told him about it after that."

(The defendant here interposed objection to the questions propounded to the witness by counsel for the State, for the reason that the statements the witness and accomplice is called on to answer did not take place in a conversation with or in

the presence of the defendant. That the proof shows, heretofore, that the crime had been committed, and that these acts and declarations took place after the consummation and completion of the offense. And. secondly, that Davis was an accomplice and a conspirator in the killing; that the court has not passed upon the question as to whether or not it is a conspiracy; and for these reasons defendant objects. Said objection is by the court overruled, and defendant excepts. And the defendant here states that, in order to save the time of the court, he objects to all evidence of actions, conversations, etc., transpiring after the commission of the offense related by this witness and accomplice. Objection overruled, and exceptions saved by defendant.)

The witness Davis, after having testified that Lucy Witherspoon washed for him and for Walter Gray, and that he carried her some clothes to wash, was asked the following questions:

"Q. Well, did you carry anything over there? A. Yes, sir; Mr. Benton's and Mr. Gray's clothes. Q. Who gave you Mr. Benton's clothes? A. Mr. Benton did." Here the record recites: "Objected to, as what the witness is now testifying to occurred subsequent to the alleged killing; overruled, to which the defendant excepts, and asks that his exception be noted of record, which is accordingly done." Upon the objections thus made and the exceptions thus saved to the ruling of the court, appellant based assignments of error as follows:

"6. Because the court permitted the witness, accomplice and co-conspirator, John Davis, to testify to facts with reference to the defendant Benton touching the alleged offense not within the presence of Benton, and after the consummation and completion of the offense charged in the indictment.

"7. Because the court allowed the witness, co-conspirator and co-defendant, John Davis, to testify as to conversation he had with the defendant, Gus Benton, about the clothes of Walter Gray [which] were burned after the completion and consummation of the offense charged in the indictment.

"10. Because the court erred in permitting the witness John Davis to testify about a conversation he had with the witnesses Sweet, Swan, Lucy Witherspoon, Potts and others, regarding the declarations, acts, and conversations made or had, not within the presence of the defendant Gus Benton, and after consumma-

tion and the completion of the charge and offense alleged in the indictment.

"11. Because the court erred in allowing the witness Swan to testify in regard to conversation had with the witness John Davis with reference to the clothes of Walter Gray being burned, said conversation having taken place in the absence of the defendant, and after the consummation and completion of the act charged in the indictment.

"12. Because the court erred in allowing Lucy Witherspoon to show conversations had with the coconspirator and defendant and accomplice, John Davis, about the washing of clothes and to whom the clothes belonged, said Davis saying to Lucy Witherspoon that the clothes were the clothes of Gus Benton, that they were sent to her by him to be washed for the said Benton; the conversation taking place between witness Davis and Lucy Witherspoon, not within the presence of the defendant, Gus Benton, and after the completion and consummation of the offense charged in the indictment.

"13. Because the court erred in permitting the witness Sweet to testify to any conversation that he had with John Davis, the witness, accomplice and coconspirator, about the defendant, Gus Benton, or any act or declaration of the said defendant, touching the alleged offense, not made in the presence of the said defendant and [made] after the completion and consummation of the offense alleged in the indictment; that the conversation of the witness John Davis had with the witness Sweet about the killing, or how it was brought about, or the act or declaration of the defendant, Gus Benton, not made within the presence of the said defendant, Gus Benton, and in his absence, and after a completion and consummation of the offense, was not competent.

"14. Because the court erred in permitting Francis Williams, Polk Simms and Lucy Witherspoon to testify to conversations of John Davis, the accomplice and codefendant, as to acts and declarations of the defendant Benton, not made within his presence, and in his absence, after the consummation and completion of the crime alleged in the indictment

"15. Because the court erred in permitting the witness Polk Simms to detail a conversation had with the codefendant and

coconspirator John Davis, the said Davis relating in the conversation that the defendant, Gus Benton, told him that he was going to Madison to find out whether the body found was that of Walter Gray, and that he would return Monday evening to the Gray store and tell him, the witness John Davis, and coconspirator, whether it was Walter Gray or not, said conversation having taken place between the codefendant and coconspirator and accomplice Davis and the witness Simms, not within the presence of Gus Benton, and after the consummation and completion of the crime·alleged in the indictment.

"16. Because the court erred in permitting the witness Swan to testify that the witness Davis and codefendant stated to him that a piece of iron that had laid about the store known as "the Gray store," on the night of the 6th of June, at the time alleged in the indictment that the crime was committed, that the co-defendant saw thrown into the St. Francis River by the codefendants Minor and Martin and the defendant Gus Benton, and that he said if the said Swan would go to the place where the co-defendant threw the iron, which was near the willow tree, he would find the same; that he, the said Swan, stated that he did go and hunt for the iron, and found it as directed by the codefendant and witness Davis. All of this conversation took place between the witness Swan, and which was testified to by the coconspirator and accomplice Davis, was not had within the presence of the defendant, and after the consummation and completion of the offense."

Other facts deemed necessary are stated in the opinion.

*M. B. Norfleet, Chas. T. Coleman* and *Campbell & Stevenson,* for appellant.

1. The court erred in admitting evidence of declarations and acts of alleged co-conspirators, made and done after the killing and in the absence of the defendant. 45 Ark. 165, 328, 332; 67 Ark. 234.

2. It was error to permit the prosecuting attorney to ask defendant if he had not been married to a negro woman and indicted for same. 2 Ark. 229, *et seq.;* 34 Ark. 649; 37 Ark. 261; 38 Ark. 221; 45 Ark. 165; 39 Ark. 278; 52 Ark. 33; 73 Ark. 152; 62 Ark. 126; 68 Ark. 577.

3. After deliberating for a time, the jury returned into court and asked for additional instructions, which the court gave them. Then a juror handed the judge a note which in substance asked the judge whether or not under the law the jury had the right to find the defendant guilty of murder in the second degree. The judge read it, and, without making known to defendant or his counsel its contents, answered "Yes." This action of the court was error, (1) because the contents of the note were not made known to the defendant or his counsel, and no opportunity to object was allowed to him. His mere physical presence in the court room did not satisfy the requirement of the law that he be present at each substantive step in the case. 44 Ark. 332; 11 Tex. App. 454; 5 Ark. 431; 19 Ark. 205; 24 Ark. 629; *Ib.* 620, *et seq.;* (2) because the question and answer amounted to an expression of opinion on the evidence by the court, and a direction to find a verdict for murder in the second degree.

4. The court erred in refusing to instruct the jury on the question of *alibi.* 41 Ark. 173; 55 Ark. 244; 59 Ark. 379. If there is any evidence, however slight, to sustain a particular theory of a case, the court should properly instruct the jury as to that theory. * * * If there is any evidence to sustain his theory, it must be submitted to the jury under proper instructions. 50 Ark. 549; 52 Ark. 47. Where the defendant's evidence tends to prove an *alibi,* a refusal of the court to instruct specially thereon is ground for reversal. 12 Cyc. 319; 2 Am. & Eng. Enc. Law (2 Ed.), 54; 11 Tex. App. 381. See also 17 Tex. App. 131; 18 Tex. App. 498; 30 Tex. App. 345; 5 Baxt. 662.

*Robert L. Rogers, Attorney General,* for appellee.

Wood, J., (after stating the facts.) Learned counsel for appellant urge:

1. That the court erred in admitting evidence of the declarations and acts of John Davis and Bob Martin, two of the alleged co-conspirators of the defendant, made and done after the killing and in the absence of the defendant.

The law is well settled that the acts and declarations of co-conspirators in the absence of the defendant after the consummation of the criminal enterprise can not be admitted in evidence. *Polk* v. *State,* 45 Ark. 165; *Foster* v. *State,* 45 Ark. 328; *Bennett* v. *State,* 62 Ark. 516; *Willis* v. *State,* 67 Ark. 234.

There is nothing in the bill of exceptions upon which to base appellant's sixth, seventh, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth assignments of error in his motion for new trial. The only objection saved was to the following questions and answers:

"Q. Who did you first tell about the burning of these clothes? A. I told Mr. Sweet about it. Q. He is a white man, is he? A. Yes, sir. Q. When did you tell him about it? A. I told him about it after that."

The witness John Davis had testified without objection to the burning of the clothes. The fact sought to be established by the accomplice, Davis, that appellant, after the commission of the crime, had burned the clothes of the man whom he was alleged to have murdered, was highly prejudicial to appellant because it tended to show guilty consciousness, in an effort to suppress evidences of his crime. But this evidence went to the jury without objection, and, having been thus admitted, there could have been no prejudice in the mere fact that he had told some one about it, especially since the one to whom he said he communicated the fact was not questioned concerning this, and had nothing whatever to say about it.

The language in the bill of exceptions in the objection, towit: "And the defendant here states that, in order to save the time of the court, he objects to all evidence of actions, conversations, etc., transpiring after the commission of the offense, related by this witness and accomplice," was not an objection to testimony that might thereafter be admitted, and was not an exception to the ruling of the court thereon. The objection was too general and indefinite. Besides, there is nothing in the record to show that the parties agreed that all exceptions to the rulings of the court on the admission or rejection of testimony were saved without being especially mentioned at the time the decision was made. In the absence of an understanding of that kind, the objection to the introduction of testimony must be made when the testimony is offered, and the exception reserved at the time the ruling is made. Sec. 6222, Sandels & Hill's Digest. It is but fair to the court that any objection to testimony should be made at the time it is offered. *Burris* v. *State,* 38 Ark. 221.

There was no prejudicial error in the witness John Davis

being permitted to testify that appellant gave him his clothes to carry to Lucy Witherspoon to be washed. This is the extent to which the objection to the testimony reached, and as an independent fact it could throw no light upon the question of the guilt or innocence of the accused. It could not have injured his cause.

The court permitted Sam Martin, a negro witness for the State, after he had stated that on the Sunday night following June 6, 1905, while he was engaged in a crap game at Gray's store with Bob Martin (the alleged co-conspirator and accomplice of appellant), some one came up, and said that the body found in the river had been identified as that of Walter Gray, to testify as follows: "While the game was going on, Frank McClelland came running down the hill, and said that that body they found was Walter Gray's, and Bob Martin had up fifty cents, and he lost thirty cents, and he left the money, and would not have it, and walked off, and said, 'I have to see Mr. Benton,' as he walked off. (Defendant objected to this testimony; objection overruled; exception saved.) Q. You say he said something about going and seeing Mr. Benton? A. Yes, sir. Q. Now, you say that Bob Martin was there at the time—that night? A. Yes, sir. Q. And when a man came up and said that was Walter Gray's body he got up and left twenty cents he still had in the half dollar? A. Yes, sir. Q. And walked off, and said he must see Mr. Benton? A. Yes, sir."

Bob Martin was a witness for appellant, and was asked, on cross-examination, this question:

"Q. I will ask you if it is not a fact that while you were engaged in this negro crap game right at the end of Walter Gray's store, if some one did not come up there and announce publicly in the game that the dead body found in the river the day before at Madison was Walter Gray, and did you not then get up and give a negro a half dollar that you owed five cents to, and quit, and say you had to go and see Mr. Benton? A. No, sir; I did not."

The testimony of Sam Martin was proper, in impeachment of the testimony of Bob Martin. The defendant, by introducing him, subjected him to the same rule of impeachment as applicable to all other witnesses. Section 3138, Kirby's Digest.

2. It is contended that the court erred in refusing to direct the jury, as prayed by appellant, not to consider the evidence of the acts and declarations of John Davis, after the killing and in the absence of Benton, and tending to connect Benton with the crime." The instruction was properly refused. Appellant, on the cross-examination of one Sweet, a witness for the State, had gone beyond the examination in chief of this witness, and had made Sweet his witness, and elicited from him the entire confession of the accomplice, John Davis, and had brought out acts and declarations of Davis which, under this instruction, would be taken from the jury. The appellant, having elicited the testimony, presumably because he thought it would be advantageous for him to do so, could not afterwards repudiate it because he conceived that it might be detrimental. A party can not, even in a criminal case, take inconsistent positions and play fast and loose with the court. If he sees proper to waive rules of evidence that are made for his protection, he may do so. If he, by affirmative acts, ignores these rules because he thinks it will advance his interest, he can not afterwards undo his work,. because he did not reap the anticipated benefit. Such conduct would destroy orderly procedure of trials, and would be unfair to the commonwealth. If appellant desired to have other declarations and acts of John Davis than those elicited by him removed from the jury, he should have specifically called attention to these in the instruction he asked. A general instruction to disregard the acts and declarations of accomplice John Davis, where some of his acts and declarations were properly before the jury, would not suffice. *Western Coal & Mining Co.* v. *Jones,* 75 Ark. 76; *Vaughan* v. *State,* 58 Ark. 353.

3. The next contention is that the court erred in permitting the prosecuting attorney to ask the defendant if he had not been married to a negro woman and indicted for same.

The record shows that, on cross-examination of the defendant by the prosecuting attorney, the following questions and answers were made: "Q. Did you not marry a negro woman in the State of Ohio, and live with her on Cat Island? A. No, sir; I never was married—to a white woman, negro or Indian. Q. Were you not married to a negro woman, and prosecuted in the Lee Circuit Court for living with a negro woman?" ( Objected

to by defendant; objection overruled, the court saying as ground therefor: "I don't know what proof the State may have." Exception saved by defendant.) Q. You deny these things, do you? A. Yes, sir. I have never been married in my life, and no record will ever show that I got a license for any woman. Q. Nowhere? A. No. Q. And you lived in Missouri and Mississippi and on Cat Island, and you deny that you have ever been married? A. I told you so. I have never been married. Q. And you were never prosecuted on this charge? A. No, sir."

In *Hollingsworth* v. *State*, 53 Ark. 387, this court, quoting from *Wilbur* v. *Flood*, 16 Mich. 40, said: "It has always been held that within reasonable limits a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents. The court has a discretion as to how far propriety will allow this to be done in a given case, and will or should prevent any needless or wanton abuse of the power. But, within this discretion, we think a witness may be asked concerning all antecedents which are really significant, and which explain his credibility." See also *Little Rock Vehicle & Implement Co.* v. *Robinson*, 75 Ark. 548.

Such of the questions as were directed to the past association of appellant with a negro woman were proper, but those that sought to show his prosecution therefor were improper. *Stanley* v. *Aetna Insurance Company*, 70 Ark. 107. However, the witness answered all in the negative, and there was no prejudicial misconduct on the part of the prosecuting attorney in persisting in asking the witness improper questions seemingly for the purpose of making the impression on the jury that appellant had lived with a negro woman and had been prosecuted for same, notwithstanding his denial thereof. The record on this point hardly brings the case within the rule announced in *Burks* v. *State*, 72 Ark. 461. We do not see how the jury could have reached the conclusion, in view of appellant's negative answers, that appellant had married and lived with a negro woman, and had been prosecuted for same. Unless they did reach such conclusion, there could not have been any prejudice to appellant's cause by reason of the improper questions.

4. Learned counsel urge that the court erred in giving ad-

ditional instructions to the jury, in the absence of the defendant, by answering the note of inquiry addressed to the court by the juror Cowen, and by telling the jury, in response thereto, that they might find the defendant guilty of murder in the second degree. The record discloses that, after "the jury had deliberated for a time, they returned into open court, and asked the judge of the court to give them additional instructions as to the law in the case; and the court proceeded to do so. One of the jurors then handed the judge a written note, the judge read it, and then turned to the jury and said 'Yes.' This note asked the judge whether or not the jury had the right, under the law, to find the defendant guilty of murder in the second degree. The contents were not publicly announced, and were known to the prosecuting attorney alone besides the judge. After the judge had read it and laid it down, the prosecuting attorney then read it himself. Counsel for the defendant had no knowledge of its contents. To this the defendant at the time objected and excepted."

It appears that the defendant was present during this proceeding, else how could he have "objected and excepted?" It is conceded that the defendant was present in person in the court room when the inquiry was made by the juror of the judge, and his answer given thereto. But it is now insisted that, inasmuch as the contents of the note were known only to the judge and prosecuting attorney, the proceeding was tantamount to a ruling of the court upon a substantive matter in the absence of appellant or his counsel. Not so. The appellant was present in person and by counsel. It does not appear that he asked that the contents of the note be disclosed, and that the court refused to reveal to him the contents of the note. If he had made the request of the court to discover the contents of the note, no doubt such request would have been granted. The record does not warrant the conclusion that the trial court, intentionally or otherwise, concealed from appellant or his counsel the contents of the note. The most it shows is that they had no knowledge of its contents. But, for aught that appears to the contrary, they might have had such knowledge upon the asking. For aught that appears to the contrary, they might not have desired such knowledge. For aught that appears to the contrary, it was their own fault that they did not obtain knowledge of the contents of the

note. Appellant can not complain here that the contents of the
note were unknown to him, or kept secret from him, when it does
not appear that he asked to have such information imparted to
him at the time the note was presented to the trial judge. He
contented himself with a mere general objection and exception,
and he must be held to have waived the information which a
specific request would doubtless have brought him. The record
does not show that the ground of objection to this proceeding
before the trial court was that the contents of the note were un-
known to appellant. Such objection can not avail here for the
first time.

The inquiry by the juror of the court was "whether or not
the jury *had the right, under the law,* to find the defendant guilty
of murder in the second degree." It will be observed that the
question did not call for an expression of opinion by the judge
on the facts in evidence. Giving the jury credit for average in-
telligence, they must have understood that the court meant to
tell them that under the charge laid in the indictment they had the
right to find appellant guilty of murder in the second degree if
the facts warranted such finding. The inquiry and answer were
equivalent to an instruction to that effect. The jury wanted
to know, not what the facts were, but what the law gave them
the right to do under the facts as they might find them. This,
we think, is the only reasonable conclusion deducible from the
inquiry, when it is considered in connection with the charge that
the court had given them declaring that they were to find the facts
in the case from the *testimony.* In instruction number twelve,
given at the request of appellant, the court told the jury that the
defendant was presumed to be innocent until there was *testimony
proving his guilt beyond a reasonable doubt;* "That the law
requires proof by legal *and credible evidence* of such a nature
that, when it is all considered by the jury, giving to it its natural
effect, they feel, when they have weighed and considered it all,
a clear and entirely satisfactory conviction of the defendant's
guilt." In the first paragraph of the oral instructions given by
the court the jury were told that the instructions were to cover
each and every phase of the testimony, that the jury were to
"take the instructions together after *they have first found the
facts;*" that, *"when they have found what the facts are in the*

*case,* then they are to take all the instructions together, and see what instructions *are applicable to the facts as they find them."* In view of these instructions, we do not see how the jury could have reached the conclusion, from the question of the juror and the answer of the court, that the court intended to express the opinion that the defendant was guilty of murder in the second degree as contended by counsel for appellant. Their argument is plausible, but their conclusion is unsound. It is at least exceedingly strained and technical.

5. The last proposition is that "the court erred in refusing to instruct the jury on the question of *alibi."* On this subject the appellant asked the following:

"No. 7. You are instructed that the evidence must support and be in conformity to the allegations made in the indictment, and must show that the accused was present, standing by, aiding, abetting and assisting at the time of the alleged killing; and if you believe that the defendant was absent at the time of the alleged killing, you can not convict under the indictment in the cause."

The court refused this request, but gave the following:

"No. 7. You are instructed that the evidence must support and be in conformity to the allegations made in the indictment, and must show, beyond a reasonable doubt, that the accused was standing by, aiding, abetting and assisting at the time of the alleged killing; otherwise you can not convict under the indictment in this cause."

Appellant also asked the following:

"10. The court charges the jury that the defendant need not prove an alibi by a preponderance of evidence; but if, by reason of the evidence in relation thereto, the jury doubt his guilt, he is entitled to an acquittal."

"11. And the court further charges the jury that where the defense is an alibi, the jury must acquit if, from a consideration of all the evidence, they have a reasonable doubt of the presence of the accused at the place and time of the alleged crime, whether such doubt be from lack of proof on the part of the State or from evidence adduced on behalf of the defendant."

These requests the court refused. But the court gave at the request of appellant the following:

"No. 2. If you find from the testimony, beyond a reasonable doubt, that Walter Gray has been killed, and also find that he was killed by some one or more of several persons, but there is a reasonable doubt as to which person committed the offense, that reasonable doubt must prevail and result in the acquittal of the defendant, unless you find that the defendant was present, aiding, abetting or assisting in the commission of the offense."

"No. 3. The jury are instructed, as a matter of law, that when a conviction for a criminal offense is sought upon circumstantial evidence alone, the prosecution must not only show, by a preponderance of evidence, that the alleged facts and circumstances are true, but they must show by such facts and circumstances as are absolutely incompatible, upon any reasonable hypothesis, with the innocence of the defendant, and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the defendant.

The defendant testified that, from shortly after nine o'clock on the night of the alleged murder until the next morning he was asleep in the Lacefield house, about seventy-five or a hundred yards away from the place where it is alleged the killing occurred at about ten o'clock in the night. Conceding that this testimony of appellant tended to prove an alibi, and warranted him in asking an instruction on that subject, and conceding that the requests were proper, the court did not err to the prejudice of appellant in refusing them. For instructions numbered two and three given at the request of appellant, and instruction number seven given by the court, covered the ground embraced in the refused requests. The instructions given required the jury to find beyond a reasonable doubt that the defendant was *standing by, aiding, abetting and assisting* at the time of the alleged killing; otherwise, they should acquit. Such is the purport of the seventh instruction, and the second, *supra,* declares *"unless you find that the defendant was present,* aiding, abetting, and assisting," etc. It necessarily followed, as the converse of the proposition presented by these instructions, that if, the jury found that appellant was absent when the killing was done he was not guilty, and the jury should so find. We can not agree with the zealous counsel that it was as "great travesty of justice to convict Benton of murder in the second degree as it would have

been to have convicted him of the higher degree." The proof tends to show a most atrocious murder, and is ample to have sustained a verdict against appellant for the higher instead of the lower degree. Since the record is otherwise free from error, that the jury were lenient is a matter to appellant for congratulation rather than for complaint.

Affirm.

BATTLE, J., dissenting.