STORMS *v.* STATE.

Opinion delivered December 3, 1906.

1. EMBEZZLEMENT—INDICTMENT.—An allegation in an indictment for embezzlement that defendant received certain money as "bailee" is sufficient to advise him that he came into possession of the money of another to be held for the other for some special purpose, upon the accomplishment of which the money was to be returned or delivered over. (Page 30.)

2. SAME—DUPLICITY.—An indictment for embezzlement which alleges that defendant, having received as bailee certain property belonging to another, unlawfully and feloniously did embezzle, and unlawfully and feloniously did steal, take and carry away, the same does not charge two separate offenses. (Page 31.)

3. TRIAL—ARGUMENT NOT BASED ON EVIDENCE.—It was prejudicial error to permit the prosecuting attorney, in his argument, to charge defendant, accused of embezzlement, with having entered into a conspiracy to rob his employer, and to make reference to acts and declarations of the alleged fellow conspirator where there was no proof of such conspiracy, and where the alleged acts and declarations were done and made in defendant's absence and after the object of the conspiracy, if there was one, had been accomplished. (Page 31.)

4. EVIDENCE—ACTS OF CONSPIRATORS.—The acts and declarations of a conspirator are not admissible against a fellow conspirator where they were done and made in the latter's absence and after the object of the conspiracy had been accomplished. (Page 31.)

5. EVIDENCE—OTHER CRIMES.—In a prosecution for embezzlement it was not error to admit evidence of other similar transactions both before and after the alleged transaction in controversy, where the jury were instructed that the evidence could only be considered on the question of intent. Page 32.)

Appeal from Sebastian Circuit Court; *Styles T. Rowe,* Judge; reversed.

STATEMENT BY THE COURT.

The appellant was indicted as follows: "The said defendant, in the county and district aforesaid, on the 1st day of September, 1905, and being then and there the bailee of Ft. Smith Commission Company, a corporation, and as such bailee having received from Dave Mayo, Tom O'Leary and Frank Mason $10.50, gold, silver and paper money of the value of $10.50, the property of said Ft. Smith Commission Company, a corporation as aforesaid, and being then and there the bailee of said Ft. Smith Commission Company, unlawfully and feloniously did convert and embezzle

to his own use the said above described $10.50, gold, silver and paper money of the value of $10.50, the property of said Ft. Smith Commission Company, and so the said Gus Storms the above described money of the value of $10.50, the property of said Ft. Smith Commission Company, unlawfully and feloniously did steal, take and carry away."

A demurrer in short to this indictment was overruled. The State adduced the following testimony:

C. B. Riley testified: "In the year 1905 I was employed as manager of the Ft. Smith Commission Company. Louis Weiman was acting as salesman and collector. Defendant was employed as wagon driver and collector of bills that he delivered C. O. D. It was his duty to collect these bills, mark the bills paid and deliver the money to the office."

Q. "I will ask you to state how you received and filled orders of these C. O. D. packages in the city of Ft. Smith?"

A. "The customer would call over the 'phone or give the order to some of our city salesmen, who would 'phone it in, and this order would be written upon one of the order sheets, and the shipping clerk would fill the order. Such orders would be turned over to the shipping clerk, who would get the goods out, mark the weight and fill out the amount in dollars and cents, make out the number of ticket, invoice to the customer going to, and turn it over to weighman or driver. The only record we have in the office was the memoranda taken down on the order blank and turned over to the shipping clerk. The order blanks were placed in the drawer of the shipping clerk's desk. In the evening these sheets were taken to the bookkeeper, and the next day he would charge them up on the ledger. The bill for the 14th of January, 1905, for potatoes and celery sold Dave Mayo, amount $10.50, was made out by Mr. Tom Williams, shipping clerk, and was marked "Paid" by the defendant Storms. There is no record in our office of this transaction. I found the bill in the possession of Mayo." The State then offered in evidence the other bills sold Mr. Mayo, five bills sold Hotel Main, and eight bills sold Stevens & Rainey, all of which were objected to. "The bills are found on page 33 of the record. There is no charge of these bills on the books of the Ft. Smith Commission Company. Frank Wyman was in the employ of the company when these bills

were purchased. I did not see the goods delivered; only know the bill was marked 'Paid.' " Cross-examination: "Don't know who delivered them or to whom the money was paid or how paid; do not say the money was not turned over to Wyman. There were about twenty other employees besides Wyman. Don't know if the money was turned over to them; the records do not show. It seems there was money turned over know what Wyman told me." Re-direct examination: "If he delivered goods, it was his duty to turn the money over to the cashier. Wyman had no right to collect. Wyman was a salesman and collector; he collected from the customers; had no authority to collect from drivers. It was Storms's custom to turn money over to the cashier. Don't know what particular bills were collected, or what moneys were turned over to the cashier; don't know whether he did or did not turn over this $10.50."

Frank Mason testified: "I was manager of Mayo's restaurant. It was the custom in the year 1905 for me to O. K. bills and for Mr. O'Leary to pay them. Some of the bills shown me were O. K.'d by Mr. Eckwood. The bill of January 14 was not paid by me; it was paid by Mr. O'Leary or Mr. Mayo." Cross-examination: "Don't know of my own knowledge whether it was ever paid, nor how it was paid. The bill shows I O. K.'d it, and it was supposed to be collected after I did this."

Dave Mayo testified: "The bill shown me of January 14, 1905, was O. K.'d by Frank Mason, and paid by somebody in our employ. I don't know who paid it. It was paid at my place of business by some one. Don't know of my own knowledge who paid it. Was not present when it was paid. Know nothing of my own knowledge except what the bill shows." Cross-examination: "Do not know of my own knowledge who made payment of the bill. Do not know whether defendant got any money on it. Do not know whether it was all paid at one time or at different times."

Emma Yonkee testified: "Was cashier and bookkeeper for the Ft. Smith Commission Company in the year 1905. C. O. D. bills in the city would be turned in by the driver, a copy of the invoice brought to the cashier, the money turned in and the bills stamped 'Paid.' When money was thus turned in, I put the amount in a book I had for record and returned the bill to the

driver after it was stamped 'Paid.' The batch of Dave Mayo's bills shown me, including the one January 14, 1905, do not appear upon my cash book to have been paid."

C. B. Riley, recalled, testified: "There is no record upon any of their books of any of the sixteen bills sold Mayo, or of the eight sold Stevens & Rainey, nor of the five sold Hotel Main."

Dave Mayo, recalled, testified that either Mr. O'Leary or himself paid the other bills shown him.

The bills introduced in evidence, other than the one upon which the embezzlement was based, consist of five bills to Dave Mayo, the first being dated February 14, 1905, and the last September 7, 1905. The five bills sold Hotel Main are of date September 8, 1905, to September 23, 1905. The first bill of Stevens & Rainey bears date May 9, 1905, and the seven others at sundry dates from that time to September 13, 1905. The introduction of each of these bills was objected to, and objection overruled.

This was all the testimony introduced on behalf of the State. Defendant introduced testimony as to his good character.

The prosecuting attorney in his opening statement to the jury, among other things, said: "That the Ft. Smith Commission Company had been systematically robbed by its employees; that the scheme by which it was accomplished was, when an order for goods to be delivered by wagon in Ft. Smith was received it would be filled, but no entry be made on any books; that the slip showing the order would be given the shipping clerk, who would put it in a drawer in the office, and afterwards a confederate in the house would steal out this slip, so it would not go to the bookkeeper; that when the goods were delivered and collection made by the defendant, he, defendant, and his confederates would divide the money; that ———— Wyman was in the deal, and had been arrested for it, but gave bond,, forfeited his bond and ran away." Defendant objected to each and every statement made by the prosecuting attorney as above set out, but the court overruled the objection, saying that he would "govern that when the evidence was offered; it might or might not be admissible."

The prosecuting attorney in his concluding argument said: "That not only did the defendant embezzle $10.50, but the bills he collected at Hotel Main, Stevens & Rainey and the other bills

collected from Dave Mayo; that this was accomplished through the scheme he outlined in his opening statement to the jury, for which Wyman had been arrested and gave bond and skipped the country." Defendant objected to each and every statement above set out. and thereupon the court said that the jury "might consider the other bills sold to Mayo, Hotel Main and Stevens & Rainey only for the purpose of determining defendant's intent, but the jury could not convict him of any offense except the one charged in the indictment, and that this evidence was admitted for the sole purpose of shedding light on the question of intent, if it did so." The court, with this statement, overruled defendant's objection, to which defendant excepted.

The court, after having instructed the jury that, in order to convict the defendant, the testimony must establish that $10.50 in gold, silver or paper money were paid to him by Dave Mayo, Frank Mason or Tom O'Leary, then gave as a further instruction the following section of Kirby's Digest:

"In all prosecutions for the unlawful taking of money by larceny, embezzlement or otherwise, it shall not be necessary to particularly describe in the indictment the kind of money taken or obtained further than to allege gold, silver or paper money, and a general allegation in the indictment and proof of the amount of money taken shall be sufficient."

The court refused to give the following instruction:

"6. The allegation in the indictment that the defendant embezzled $10.50 in gold, silver or paper money paid him by Dave Mayo, Frank Mason or Tom O'Leary is a material allegation, and must be proved as charged beyond a reasonable doubt. If the evidence does not establish the kind of money received by the defendant and the value of that money, the jury cannot presume that he received from them $10.50 in gold, silver or paper money, and that its value was ten dollars and fifty cents."

To the action of the court in refusing to give this instruction, and in giving in charge the section of Digest above set out, the defendant excepted.

The jury returned a verdict of guilty.

Appellant filed his motion for new trial, containing all the exceptions reserved. It was overruled. Motion in arrest was overruled. Appellant prosecutes this appeal.

*Ira D. Oglesby,* for appellant.

1. The indictment is bad. It should have stated the facts constituting the alleged bailment, how and in what way defendant was bailee, instead of merely stating conclusions. It is also bad because it charged two offenses, larceny and embezzlement.

2. The cause should be reversed on account of language used by the prosecuting attorney in his opening statements and concluding argument to the jury, which was necessarily prejudicial to the defendant, and which were not supported by testimony. 71 Ark. 416.

3. The court erred in allowing other bills of merchandise alleged to have been sold long after the offense by defendant was alleged to have been committed. The testimony in this case does not fall within the rule laid down in 72 Ark. 586.

4. It was error to refuse the sixth instruction asked for by defendant, and also, under the testimony in this case, it was error to give the section of the Digest to the effect that it was not necessary to prove the value of the money alleged to have been received. It was in conflict with other instructions given, and authorized a conviction although the evidence did not show the kind of money embezzled nor the value thereof.

*Robert L. Rogers, Attorney General,* and *G. W. Hendricks,* for appellee.

1. Evidence of other crimes of exactly the same nature, occurring about the same time, and in each case the order blank, the evidence of the sale retained at the store, was missing, negatives the theory of mistake, and on this ground the evidence was admissible. Wigmore on Evidence, § 329.

2. The prosecuting attorney's statements, although partly out of the record, were not prejudicial.

3. Instruction numbered six asked by appellant was substantially included in another instruction already given, and it was properly refused; and in lieu of that instruction it was proper to give in charge to the jury the section of the Digest.

WOOD, J., (after stating the facts.) The indictment is good. The term "bailee" is used in the statute, section 1839, Kirby's Digest. Alleging that a person received as a "bailee" certain money is sufficient to advise such person that he came into pos-

session of the money of another to be held for the other for some special purpose, upon the accomplishment of which special purpose the money is to be returned or delivered over. Schouler on Bailments, § 2.

The indictment does not charge two separate and distinct offenses. The crime alleged in the indictment is embezzlement which, committed under the circumstances and in the manner detailed, the statute denominates also larceny. Sec. 1839, Kirby's Digest. Only one offense is alleged.

The court erred in permitting the prosecuting attorney to argue that Wyman and the defendant "entered into a conspiracy to rob and were conspirators in robbing the Ft. Smith Commission Company, that Wyman would take the tickets out of the drawer after they had been made by the shipping clerk, so that they would not go to the bookkeeper, and that the defendant would collect the bills and divide the spoils, with Wyman; that Wyman had been arrested for it, had forfeited his bond and run away, left the country." There was no evidence upon which to ground this argument. It was not shown that Wyman and appellant were in a conspiracy to rob the Ft. Smith Commission Company. Even had such conspiracy been shown, the acts and declarations of one of the conspirators in the absence of the other, after the object of the conspiracy had been accomplished, could not be used in evidence against the one on trial. *Benton* v. *State,* 78 Ark. 284, and authorities cited. It was therefore highly prejudicial to appellant for counsel to assert as a fact that appellant was in a conspiracy with another to rob the Ft. Smith Commission Company, and that the other conspirator had been arrested, had given bond, and had fled the country. Thus counsel attempted by assertion, without proof, to make the impression upon the jury that one was associated in crime with appellant and had shown by flight his consciousness of guilt. If the jury accepted as true the assertion of counsel, the inevitable conclusion would be that appellant was also guilty. For in a conspiracy of two one is necessarily as guilty as the other. The argument was most unfair to appellant, and well calculated to prejudice his cause before the jury. While we would not have disturbed the verdict upon the evidence aside from this improper argument, we are not so clearly convinced of appellant's guilt

upon the undisputed facts as to be able to say that the verdict was not caused by the *extraneous evidence* and improper argument which the prosecuting attorney brought into the record. See *Marshall* v. *State*, 71 Ark. p. 415.

The court did not err in refusing appellant's request for instruction numbered six, and in giving instead section 1844 of Kirby's Digest. This statute makes it unnecessary, where it is alleged, as in this indictment, that gold, silver, and paper money was embezzled, to do more than prove the amount of money, in all taken. That proof was made in this case by showing that the bill of Mayo marked paid by appellant amounted to $10.50. From this and other proof the jury were warranted in concluding that appellant had received the sum of $10.50.

The court did not err in admitting evidence of other similar transactions by appellant before and after the alleged transaction in controversy, since it was admitted with the limitation that it could only be considered on the question of intent. I Wigmore on Ev. § 329; *Howard* v. *State*, 72 Ark. 586. If appellant was guilty at all, the particular criminal act under consideration according to the proof was one of a series of similar acts, and these were admitted to prove system and show design. *Howard* v. *State*, 72 Ark. 586, *supra; Johnson* v. *State*, 75 Ark. 427.

The judgment is reversed, and the cause is remanded for new trial.

Hill, C. J., (dissenting.) It is true that the prosecuting attorney referred to an unproved matter, the alleged flight of Wyman, but it was not a matter going to the real issue of the case—the guilt or innocence of this defendant—and I regard it as trivial, not prejudicing any substantial right of defendant; and the court's instruction removed any possible prejudice by confining the jury's attention to the real issue, which, according to previous decisions, is sufficient in such cases.

Mr Justice Battle concurs in this dissent.